IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

MAURICE GOODMAN,
o/b/o T.M.L.G., a minor,

     Plaintiff,

v.                                 CASE NO. 1:17-cv-125-MW-GRJ

NANCY A BERRYHILL,
Acting Commissioner of Social Security,

     Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff, on behalf of his minor son T.M.L.G. ("Claimant") appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") terminating the Claimant's Child Supplement Security Income ("CSSI") disability benefits following a continuing disability review ("CDR"). The Commissioner has answered, and both parties have filed briefs outlining their respective positions. ECF Nos. 8, 16, 17. For the reasons discussed below, the undersigned recommends that the Commissioner's decision be **AFFIRMED**.

## I.  PROCEDURAL HISTORY

Claimant was initially awarded disability benefits beginning in December 2011, when he was two years old, due to attention deficit and

hyperactivity disorder ("ADHD") and asthma.  R. 95-114.  The agency

conducted a CDR and determined on October 29, 2014, that he was no

longer disabled.  R. 116-20.  The cessation of benefits was affirmed on

reconsideration and Plaintiff received a hearing before an ALJ.  R. 37-70,

133-49.  The ALJ issued an unfavorable decision on May 3, 2016, finding

that the original allowance of benefits was unsupported by substantial

evidence, and also concluding that Claimant had medically improved since

the comparison point decision ("CPD") such that he was not disabled.  R.

15-29.  The Appeals Council denied review.  R. 1-3.  This appeal followed.

Plaintiff argues that substantial evidence does not support the ALJ's finding

regarding the original disability decision or his determination that Claimant

is no longer disabled due to medical improvement.  ECF No. 16.

## II.  STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by

substantial evidence.[1] Substantial evidence is more than a scintilla, *i.e.*, the

evidence must do more than merely create a suspicion of the existence of

a fact, and must include such relevant evidence as a reasonable person

---

[1] *See* 42 U.S.C. § 405(g) (2000).

would accept as adequate to support the conclusion.[2]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[3] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[4]  However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[5]

The law considers a child disabled, for the purposes of CSSI

---

[2] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); *accord,* Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[3] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[4] Foote, 67 F.3d at 1560; *accord,* Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

[5] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

benefits, if that child has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[6] However, no child who "engages in substantial gainful activity . . . may be considered to be disabled."[7] A "physical or mental impairment" is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."[8]

The regulations set forth a three-part sequential test the Commissioner must follow when determining disability in children.[9] First, it must be shown that the child is not performing substantial gainful activity.[10] Second, it must be shown that the child suffers from an impairment or combination of impairments that is severe.[11] Third, it must be shown that

---

[6] 42 U.S.C. § 1382c(a)(3)(C)(I) (2003).

[7] 42 U.S.C. § 1382c(a)(3)(C)(ii).

[8] 42 U.S.C. § 1382c(a)(3)(D).

[9] 20 C.F.R. § 416.924(a) (2007).

[10] 20 C.F.R. § 416.924(b).

[11] 20 C.F.R. § 416.924(c).

the child's impairments meet, medically equal, or functionally equal the severity of an impairment in the listings.[12] If the child does not meet all three criteria then the child is not disabled.  In determining the severity of impairments, the Commissioner must consider the combined effect and combined impact of all of the individual's impairments.[13]

In addition to the three-part test, the Commissioner must find that the child's impairment meets the duration requirement, which means the impairment must be expected to result in death or to last longer than 12 months. If the child meets all three criteria and the duration requirement, then the child is disabled.[14]

After a child is found to be eligible for CSSI, the Commissioner performs a periodic review of the case to determine whether the child is still eligible to receive CSSI due to any medical improvements.  When making such a determination, the Commissioner implements a three-step Medical Improvement Review Standard Sequential Evaluation Process.[15]

---

[12] 20 C.F.R. § 416.924(d).

[13] 42 U.S.C. § 1382c(a)(3)(G).

[14] 20 C.F.R. § 416.924(d)(1).

[15] *See*, *e.g.,* Verdecia v. Colvin, 2015 WL 12556299, at * 2 (S.D. Fla. Mar. 31, 2015) (citing 20 C.F.R. § 416.994a(b)).

"At step one, the [Commissioner] first considers whether there has been a medical improvement in the claimant's condition."[16]  At step one, the Commissioner "examines if medical improvement has occurred in the impairment(s) that the claimant had at the time of the most recent medical determination that he [or she] was disabled, which is known as the 'comparison point decision' ('CPD')." [17] If there are no improvements in a claimant's CPD impairments, then the claimant is considered disabled unless an exception found in 20 C.F.R. § 1994(e)–(f) applies.[18]

At step two, the Commissioner considers whether the impairments the child had at CPD still meet (or medically or functionally equal) the severity of any of the listed impairments.[19]  When the Commissioner finds that a claimant's impairments did not meet or medically equal the listed impairments at CPD (but functionally equaled the listed impairments at CPD), the Commissioner must consider whether the claimant's CPD

---

[16] *Id*.

[17] *Id*. at *3.

[18] *Id.*

[19] *Id*.

impairments now functionally equal the listed impairments.[20] "If there is a functional equivalence, the child is disabled; if not, the Commissioner moves to step three."[21] At step three, the Commissioner "decides if the child is currently disabled... by considering all the impairments the claimant has now, including any not present or not considered at the CPD."[22] When making a determination at step three, the [Commissioner] must make three separate findings.  "First, the [Commissioner] must determine whether the child has a severe impairment or combination of impairments."[23]  Second, if the child has a severe impairment or a combination of impairments, the Commissioner then determines if such impairments meet or medically equal the severity of any of the listed impairments.[24] Third, "if the child's impairments do not meet or medically equal a [listed impairment], the [Commissioner] must determine if the claimant's impairments functionally

---

[20] *Id.*

[21] *Id.*

[22] *Id.*

[23] *Id.* "An impairment or combination thereof is not severe if it is a slight abnormality or combination of slight abnormalities resulting in, at most, minimal functional limitations." Id. (citing 20 C.F.R. § 416.924(c)).

[24] *Id.*

equal the [listed impairments]."[25]

## III. ADHD LISTING

Listing 112.11 for ADHD provides in pertinent part that for a child to meet the required level of severity for this listing, the child must show medically documented findings of all three of the following: (1) marked inattention, (2) marked impulsiveness,  and (3) marked hyperactivity, and establish at least two of the following: (1) marked impairment in age-appropriate cognitive/communicative function; (2) marked impairment in age-appropriate social functioning; (3) marked impairment in age-appropriate personal functioning; or (4) marked difficulties in maintaining concentration, persistence, or pace.[26]

Provisions for determining functional equivalence are established under 20 C.F.R. § 416.926a. Stated generally, to functionally equal a listed impairment, a child must demonstrate an "extreme" limitation in one domain of functioning, or show a "marked" limitation in two domains of functioning.[27] There are six domains of functioning to be considered: (1)

---

[25] *Id*.  In making this determination, the ALJ considers the same six domains that are considered in the initial three-step disability determination. *Id*.

[26]  20 C.F.R., Part 404, Subpart P, Appendix 1, Listing 112.11.

[27] 20 C.F.R. § 416.926a(a)

acquiring and using information; (2) attending and completing tasks; (3)

interacting and relating with others; (4) moving about and manipulating

objects; (5) caring for oneself; and ( 6) health and physical well-being.[28] A

"marked" limitation in a domain means that the child's impairment

"interferes seriously with [their] ability to independently initiate, sustain, or

complete activities."[29] An "extreme" limitation in a domain means that the

child's impairment "interferes very seriously with [their] ability to

independently initiate, sustain, or complete activities."[30]

## IV.  SUMMARY OF THE RECORD

### A. Findings of the ALJ

The ALJ determined that the CPD was the April 2, 2012, favorable

decision finding that Claimant was disabled as of December 2011.  R. 18,

92, 95-114, 417.  At the time of the CPD, Claimant had the medically

determinable impairments of ADHD and asthma.  At that time, the ADHD

was found to satisfy the relevant listing, Section 112.11 of 20 C.F.R. Part

404, Subpart P, Appendix 1.  The ALJ found that, upon consideration of

---

[28] 20 C.F.R. § 416.926a(b)(1).

[29] 20 C.F.R. § 416.926a(e)(2).

[30] 20 C.F.R. § 416.926a(e)(3).

the record as a whole, the original allowance "was inadequately rationalized and is not supported by substantial evidence.  An error occurred at that time that constitutes an exception to medical improvement."  R. 19.  The ALJ then determined that even if that was not the case, a review of the evidence using the applicable medical improvement standard still resulted in a determination that Claimant was not disabled, because medical improvement occurred as of October 29, 2014.  *Id*.  In support of this finding, the ALJ explained that the medical evidence showed that Claimant had less than marked or no limitations in the six functional domains.  R. 23-28.  The ALJ concluded, based on the evidence, that Claimant did not have an impairment at the CPD that was not considered at that time, and had not developed any additional impairments subsequent to the CPD.  Because Claimant did not have an impairment or combination of impairments that met or medically equaled the listings, or that functionally equaled the listings as of October 29, 2014, the ALJ determined that his disability ended as of that date.  R. 28-29.

### B.  Medical Evidence

The ALJ discussed the following medical evidence in finding that Claimant's original allowance was unsupported by substantial evidence

and also that he had improved since the CPD such that he was not disabled.  Plaintiff does not argue that the ALJ erred in assessing the effects of Claimant's asthma, and therefore the summary of the medical evidence focuses on Claimant's ADHD.  *See* ECF No. 16.

The prior file that was before the agency during consideration of Claimant's initial application is identified as Exhibits 1F and 2F in the record.  *See* R. 3 (Court Transcript Index identifying records as "PRIOR FILE").[31]  The medical records from the prior file reflect that Claimant had normal neurological and developmental testing during his examinations.  *See* R. 353, 356, 360, 362, 366, 371, 375, and 381.

Claimant underwent a consultative examination by Dr. Jeremy Harris on March 20, 2012, when he was approximately 29 months of age.  Dr. Harris noted that the family history was significant for polydrug abuse by Claimant's birth mother.  Claimant's father described him as "extremely impulsive and in constant motion."  Apart  from nasal discharge, Claimant's

---

[31]Plaintiff argues that the ALJ did not have the entire prior file before him when he determined that the initial allowance was unsupported.  ECF No. 16 at 28.  As the Commissioner points out, Plaintiff's argument is incorrect because the administrative record includes the records identified as the "prior file".  *See* ECF No. 17 at 7; R. Exhibits 1F and 2F .  Plaintiff identifies no relevant records that were not included in the prior file at the time of the CPD.

physical and neurological examination was essentially normal.  Dr. Harris

performed a Denver Developmental Assessment, and concluded that

Claimant's personal-social skills were consistent with those of a 17-month-

old child.  Although Claimant could feed himself, remove a garment, use a

spoon and a fork, and help in the house, he was unable to put on his

clothes, brush his teeth, or wash his hands by himself.  Claimant's fine

motor skills were consistent with those of a 16-month-old child; he was

unable to build a tower of four or six cubes, imitate a vertical line, or wiggle

his thumb.  Claimant's language skills were consistent with a 36-month-old

child.  His gross motor skills were consistent with a 25-month-old child.  Dr.

Harris concluded that Claimant's asthma was well controlled and did not

pose a marked limitation.  *Id.*

Dr. Harris assessed that Claimant had "hyperactivity," noting that

"although many children this age are normally vigorous and curious, he far

exceeds the upper limit of normal behavior.  His mother's crack cocaine

use in pregnancy is likely [a] contributing factor.  He needs to be seen by a

behavioral pediatrician or child psychiatrist for this issue."  Dr. Harris also

noted Claimant's low scores on the Denver Developmental Assessment,

and opined that "his inability to concentrate may have artificially lowered"

his scores in some areas.  R. 384-86.  Dr. Harris' opinion formed the basis for the CPD, which found that Claimant's impairments functionally equaled the Listing for ADHD because he had "marked" limitations in two functional domains: "attending and completing tasks" and "caring for yourself".  *See* R. 18, 92-93, 417-24.

An April 2014 SSA Function Report completed by Plaintiff on behalf of Claimant discloses that at that time Claimant was toilet trained, used utensils to eat, could dress with and without help, brushed his teeth with help, and put toys away.  R. 226.  Plaintiff noted on a questionnaire that Claimant "is a very fun loving child but requires a lot of one on one time. He learns quickly but also forgets a lot just as easily as he requires a lot of redirection to stay focused."  R. 218.

On October 1, 2014, Claimant was seen at UF Pediatrics for behavioral issues.  His physical examination was normal apart from a diagnosis of mild reactive airway disease.  He was assessed as hyperactive, with a recommendation for a Fundamental Therapy Behavior Program and follow up in six weeks.  R. 435-36.

On October 2, 2014, shortly before Claimant's fifth birthday, Diana Benton, Psy.D., performed a consultative examination.  R. 426-29.  Dr.

Benton diagnosed Claimant with ADHD, combined type.  Claimant was

fully cooperative, and he self-reported that he is capable of eating

unassisted but could not dress himself.  Claimant's father reported that he

gets along well with friends.  Dr. Benton assessed claimant as friendly,

talkative, well-groomed, and appearing older than his stated age due to his

size.  Eye contact was good, and he was alert and aware.  Claimant was

"in almost constant motion" as he engaged in various activities.  He talked

and sang to himself and made mouth noises as he played.  There was no

evidence of expressive or receptive difficulties with speech, and he was

able to converse appropriately and understand and follow three-part

directions.  Thought processes were logical and goal-oriented, there was

no evidence of delusions or abnormal thought content, and no evidence of

perceptual abnormalities.  His mood was euthymic with congruent affect.

He was well oriented to person, time of day, and situation.  Immediate

memory was characterized by the repetition of three digits forward.  Recent

memory was characterized by recall of 0 of 3 objects at five minutes.

Remote memory was intact.  Claimant was able to name animals without

being cued and was able to name the colors of objects.  He could sing the

alphabet song, but was unable to count in order from one to ten.  Dr.

Benton assessed that Claimant "appears to have deficits in the areas of attending and completing tasks and acquiring and using information," but she did not opine on the extent of functional limitations associated with such deficits.  *Id*.

In October 2014, state agency consulting physicians James Jamison, M.D., and Patricia Clark, Psy.D., reviewed Claimant's medical records and determined that medical improvement had occurred.  Marked limitation was found in the domain of attending and completing tasks (Domain 2), and less than marked or no limitations were found in the other domains.  R. 419-24.

In December 2014, clinic notes reflect that Claimant recently started school and needed written documentation of asthma, ADHD, and his vaccination record.  On examination, Claimant was described as a "hyperactive child constantly moving around room, invading personal space, and talking over conversation."  He was assessed as having "behavioral issues and delays, which are most likely related to parenting." It was suggested that Claimant would benefit from behavioral interventions and medication.  Claimant's ADHD could not be documented for school purposes because he did not yet have a diagnosis of ADHD, and he was

referred to the UF ADHD clinic.  R. 432-34.

Claimant's pre-K teacher, L. Yordi, completed a questionnaire in January 2015, reporting that Claimant's reading, math, and written language skill instructional levels were below average.  Claimant required structure and support because of difficulties focusing on instructions, and he required redirection and monitoring.  An Individualized Education Plan (IEP) had been initiated in December 2014.  Claimant was assessed by the teacher as having problems in all domains except for "medical conditions," about which the teacher could not opine.  R. 450-57.

In February 2015, agency consultants Heather Bradley, Ph.D., and David Guttman, M.D., reviewed Claimant's records and opined that Claimant had a marked limitation in the domain of attending and completing tasks due to his diagnosis of ADHD (Domain 2) and based upon the consultative examination by Dr. Benton and the teacher questionnaire.  Claimant had less than marked or no limitations in all other domains.  In March 2015, the consultants opined that there was evidence of medical improvement since the CPD, in which Claimant had been found to have marked limitations in the domains of attending and completing tasks (Domain 2) and caring for himself (Domain 5).  R. 471-76, 481-86,

487-92.

In March 2015, Dr. Benton conducted a Learning Disability Evaluation.  R. 478-80.  Claimant was generally cooperative, but had some attention difficulties.  An estimate of Claimant's intellectual functioning yielded a Full Scale IQ of 80, in the low-average range.  Assessment of functioning in specific academic areas did not show that Claimant met the criteria for a specific learning disorder.  Due to his attention difficulties and lack of best effort, Dr. Benton concluded that Claimant's results "may underestimate his true abilities and test results should be interpreted with caution."  *Id*. at 478.

Clinic notes from March 2015 reflect that Claimant was "doing well" with his asthma treatment and needed his medication less frequently.  Physical examination findings were normal, and the notes do not reflect reports of behavioral difficulty.  R. 495-98.

Claimant was examined by Siraj Siddiqi, M.D., in UF's ADHD clinic in April 2015.  R. 507-09.  Dr. Siddiqi noted Claimant's history of developmental delay and that he was receiving speech and occupational therapy.  His parents reported disruptive and aggressive behavior, and poor sustained attention.  They expressed concern that he would not be

ready for kindergarten.  His parents reported hyperactivity beginning

shortly after age 2 that had gradually progressed.  He received no

interventions until beginning pre-K.  Claimant was "quite busy" in the exam

room and required redirection.  He was unable to copy age-appropriate

figures and unable to perform most physical tasks on developmental

testing, though he was cooperative and maintained good eye contact.  On

his developmental profile, Claimant showed delays in his communication,

academic, cognitive, and social development.  Dr. Siddiqi's plan was to

obtain more information from Claimant's teachers, and then possibly

suggest medication management.  *Id*.  In a note faxed to Alachua County

Public School's (ACPS) Exceptional Student Education (ESE) office in May

2015, Dr. Siddiqi included a diagnosis of ADHD resulting in "other health

impairment".  Dr. Siddiqi stated that Claimant needs small group

instruction, and reported that Claimant was prescribed Focalin XR.  R. 525.

A medication report provided by Plaintiff to SSA discloses that Claimant

was first prescribed Focalin in June 2015.  R. 289.

A UF Advanced Registered Nurse Practitioner (ARNP), Amy

Dendinger, stated in a September 2015 letter that Claimant's ADHD

symptoms were controlled with medication.  She opined that Claimant

"meets the federal definition of a 'developmental disability,'" but stated that Claimant required psychoeducational testing to determine whether he has "substantial functional limitations in at least three areas."  R. 503.

ARNP Dendinger's follow-up clinic notes from October 2015 reflect that Claimant was not doing well on his medication at that time (identified as Adderall 5mg) and that he would start Focalin XR 10mg daily.  She noted that he "was on this before and it worked well."  She also recommended behavioral counseling for self-regulation techniques as well as educational modifications at school and behavioral interventions at home.  R. 514-17.

In a December 2015 followup visit, ARNP Dendinger noted "no concerns at this time.  Since the time of the last visit, [Claimant's] development has significantly improved and behavior has significantly improved."  Claimant was in 1st grade in a regular classroom and "is doing well."  It was noted that he "is responding well to interventions," including speech therapy, and his parents were happy with the accommodations under his IEP.  No unusual behavior was observed, and Claimant's speech/language were developmentally appropriate, with "no concerns."  The general assessment was that "overall [Claimant] has improved."

Claimant was continued on his ADHD medication.  R. 526-31.

ACPS records from January 2016 document that Claimant had difficulty staying on task and concentrating when he did not take his ADHD medication, but that his behavior had improved following an increase in his medication and starting a daily behavior sheet.  R. 320-24.  Claimant's teacher observed that Claimant had increased difficulty when his medication wears off.  He did not appear to have any difficulty with age-appropriate self-help skills.  R. 326-28.

Progress reports from the 2015-16 school year reflect that Claimant was not meeting grade level expectations in some courses, but was participating and putting forth good effort.  In his Cycle 1 Report Card, Claimant's performance was rated as not satisfactory for language arts and science, with comments that he did not meet grade level expectations, that he participated in class activities, displayed disruptive behavior, and that there was a positive behavior intervention/strategy.  R. 346.  For Cycle 2, Claimant was rated as not satisfactory in language arts and math, with comments that he did not meet grade level expectations, that he had shown improvement, that he was putting forth good effort, that there was a positive behavior intervention/strategy, and that he did not turn in

homework.  R. 317.  For Cycle 3, Claimant was rated as not satisfactory
only in language arts.  R. 347.  Comments reflect that he did not meet
grade level expectations in language arts, math, and science, but that he
put forth good effort, participated in class activities, and that there was
positive behavior intervention/strategy.  *Id.*

## C.  Hearing Testimony

Claimant's hearing took place on March 16, 2016.  R. 38-70.  At that
time, Claimant was six years old and attending pre-K at Lawton Chiles
Elementary, due to having a late birthday.  R. 41.  Claimant was enrolled in
an IEP.  He took Focalin as prescribed for ADHD.  Claimant's father
testified that the medications worked until about 1:30 p.m., and that
Claimant had behavioral issues when he came home.  He had not yet been
prescribed additional medication to take at school in the afternoon.  R. 47-
48.  Claimant could count to 10 and knew basic colors.  Claimant could
ride a two-wheeled bike, throw a football, run, hop on one leg, and climb
stairs.  Claimant could feed himself.  He did not sleep well.   Claimant's
father had been contacted by the school because of disciplinary issues.  R.
50-53.

Claimant watched television and expressed that he likes to read,

though his father testified that he was not yet able to read.  Claimant

demonstrated that he could sing the ABC song.  Claimant and his father

stated that Claimant could take out the trash.  Claimant was sometimes

angry and disobedient.  Claimant's father testified that Claimant was easily

distracted and startled by loud noise.  R. 64-67.

At the conclusion of the hearing, Claimant's representative argued

that Claimant had marked difficulties in Domain 1 (acquiring and using

information) and Domain 2 (attending and completing tasks), and that he

meets the definition of ADHD.  R. 68.

## V.  DISCUSSION

Plaintiff argues that "on the face of the medical record, there is no

significant medical improvement."  ECF No. 16 at 18.  Plaintiff contends

that the ALJ erred in concluding that the original allowance was

unsupported by substantial evidence because "there is no way of knowing

whether the prior medical evidence included in the current file is all of the

medical evidence used" at the CPD.  R. 28.  Plaintiff argues additionally

that in determining that Claimant is not currently disabled the ALJ

disregarded the opinions of two state agency physicians who "although

they found that the Plaintiff did not exhibit marked impairment in two

domains, they did find marked impairment in one of the six domains."  *Id*.

at 28-29.  Plaintiff then contends that "more importantly, the [ALJ's]

decision violates both the treating physician rule and the experience of the

Alachua County School District in 2016."  *Id*. at 29.  Plaintiff asserts that

Dr. Siddiqi's notes do not disclose medical improvement.  *Id*.  Plaintiff also

points to ARNP Dendinger's notes from October 2015, reflecting that

Claimant's current medication was not working, and that his development

and behavior had not changed.  *Id*. at 29-30.   Plaintiff concedes that

medical records from December 2015 reflect significant improvement, but

contends that such improvement was short-lived based upon the ACPS

records disclosing difficulties with classroom behavior, focusing, following

directions, and meeting grade level expectations.  *Id*. at 30.

### A.  ALJ's Assessment of Original Allowance

The ALJ concluded that it was "questionable" whether the evidence

of record established the necessary criteria at the time of the original

allowance, and that the original allowance was "inadequately rationalized"

and not supported by substantial evidence.  R. 19.  As support for this

conclusion, the ALJ noted that at the time of the CPD Claimant had not

been seen or evaluated by a mental health professional and there was no

longitudinal treatment record that supported the observations contained in
the report of the consultative examiner.  *Id*.; *see* R. 384-86 (Dr. Harris' CE
report).  It is clear from the analyses of the CPD in the record that the CPD
was based wholly on Dr. Harris' report.  *See* R. 92-93, 417-18 (continuing
disability review (CDR) forms referencing the CPD impairments as being
based on the "CE vendor" examination).  Plaintiff suggests that there may
have been other medical records underlying the CPD, but the
administrative record contains the "prior file" and Plaintiff has pointed to no
other records that would have been considered at the CPD.

The ALJ did not explain why Dr. Harris' findings, which were based
on his examination of Claimant and the administration of an age-
appropriate developmental assessment,  would not have been entitled to
controlling weight at the CPD.  The ALJ is "required to state with
particularity the weight he gave the different medical opinions and the
reasons therefor."[32]  Further, because an ALJ is not permitted to substitute
his judgment for that of the medical experts,[33] the ALJ cannot reject

---

[32] Lucas v. Sullivan, 918 F.2d 1567, 1574 (11th Cir. 1990)(noting "the ALJ should
state the weight he accords to each item of impairment evidence and the reasons for
his decision to accept or reject that evidence").

[33] Graham v. Bowen, 786 F.2d 1113, 1115 (11th Cir. 1986); Freeman v.
Schweiker, 681 F.2d 727, 731 (11th Cir. 1982).

portions of a medical opinion without providing an explanation for such a decision.[34]  Although the ALJ explained his conclusion by pointing to the lack of an evaluation by a mental health professional and the absence of a longitudinal treatment record that supports Dr. Harris' observations, lack of corroborating evidence alone "is not sufficient to support a finding that an impairment did not exist at a disabling level of severity." *Spellman v. Shalala*, 1 F.3d 357, 363 (5th Cir. 1993) (citing *Lichter v. Bowen*, 814 F.2d 430, 431 (7th Cir. 1987)).

As explained in the CDR, Claimant was found at the CPD to have marked limitation in the domain of  "attending and completing tasks" because Dr. Harris observed his hyperactivity which "far exceeds the upper limit of normal behavior," as corroborated by Plaintiff's report that Claimant "is extremely impulsive and in constant motion."  Claimant was found to have marked limitation in the domain of "caring for yourself" based on his low score on the Denver Developmental Assessment, which placed his personal social age equivalent at 17 months, less than 2/3 of his chronological age.  The marked limitation in the "caring for yourself" domain was also supported by Plaintiff's contemporaneous function report

---

[34] <u>Morrison v. Barnhart</u>, 278 F. Supp. 2d 1331, 1337 (M.D. Fla. 2003).

reflecting that Claimant at that time did not cooperate with dressing or

brushing teeth and did not drink from a cup independently.  R. 92, 417.

These CPD findings are uncontradicted by information contained in the

prior file, and constitute substantial evidence for the original disability

finding.

The ALJ thus arguably erred in concluding that the CPD was

unsupported by substantial evidence.  However, that error is not dispositive

of this appeal because, as explained below, the ALJ's alternative

determination that Claimant is not disabled due to medical improvement is

supported by substantial evidence.

### B.  ALJ's Assessment of Medical Improvement

The ALJ found at Step One of the Medical Improvement Review

(MIR) that Claimant had experienced medical improvement in his

impairments existing at the time of the CPD.  R. 18-19.  As noted, at the

ALJ hearing Claimant's representative argued that Claimant had marked

difficulties in Domain 1 (acquiring and using information) and Domain 2

(attending and completing tasks), and that he "meets the definition of

ADHD."  R. 68.  The representative did not argue that Claimant continued

to have marked difficulties in Domain 5 (caring for himself), as found at the

CPD.

In this appeal, Plaintiff contends that the ALJ erred in finding a less than marked limitation in Domain 2.  *See* ECF No. 16.  Thus, while Plaintiff contends that the ALJ erred in finding medical improvement at Step One, there appears to be no real dispute that Claimant improved from a "marked" limitation in Domain 5 to a "less than marked" limitation, as assessed by the ALJ.  *See* R. 27.  The ALJ's finding is supported by evidence, summarized above, that Claimant is able to feed himself and express himself, and performs self-care tasks with some assistance, consistent with his age.  *See* R. 422 (domain evaluation completed by agency consulting physicians finding "less than marked" limitation in Domain 5, based upon Dr. Benton's October 2014 examination and Plaintiff's function report).

As explained above, to functionally equal a listed impairment, a child must demonstrate an "extreme" limitation in one domain of functioning, or show a "marked" limitation in two domains of functioning.[35]  Thus, the ALJ's finding of medical improvement in the CPD impairment at Step One is supported by substantial evidence because notwithstanding the ALJ's

---

[35] 20 C.F.R. § 416.926a(a)

finding regarding Domain 2, Claimant would no longer satisfy the ADHD listing with a marked limitation in only one functional domain, and Claimant does not assert error in the improvement finding regarding Domain 5.

At Step Two of the MIR, the ALJ determined that since October 29, 2014, the impairments that Claimant had at the time of the CPD did not meet or medically equal a listed impairment.  R. 19.  At Step Three of the MIR, the ALJ determined that since October 29, 2014, the impairments that Claimant had at the time of the CPD did not functionally equal the listings, based on his assessment of the six functional domains.  *Id*.

Plaintiff contends that the ALJ erred in discounting the opinions of the state agency consulting physicians who assessed a "marked" limitation in Domain 2, attending and completing tasks.  The ALJ concluded that the record "does not support a finding of marked or extreme limitation in any domain," and that no medical opinion of record was consistent with a finding of disability. The ALJ considered the consultants' opinions and afforded them only "partial weight".  Those opinions found a marked limitation in Domain 2, but the ALJ declined to adopt that limitation.  R. 22. The ALJ instead found a less than marked limitation.  The ALJ acknowledged that Claimant has a diagnosis of ADHD and difficulty staying

focused and completing tasks, and that he is distractible and requires redirection.  While finding that such behavior causes functional limitation, the ALJ noted that the record reflects "significant improvement with medication compliance," and recent records "note significant improvement in his development and behavior."  R. 24.[36]

The ALJ's explanation for only partially accepting the opinion of the state agency consultants is supported by substantial evidence.  Plaintiff argues that Claimant did not improve with medication, but as the ALJ observed the medical evidence shows otherwise after his medication and dosage were changed from one that was less effective for him (Adderall) to one that had proven effective (Focalin XR).  *See* R. 526-31 (ARNP Dendinger's notes).  The ALJ also pointed to ACPS records documenting that Claimant's behavior improved with adjustments to his medication, and that while he was not meeting grade level expectations in some subjects he was participating and putting forth good effort, participated in class

---

[36]The Commissioner mistakenly argues that the ALJ adopted the finding of "marked" limitation in Domain 2.  The mistake is understandable because the ALJ misstated in one sentence that Claimant "has had marked limitation in attending and completing tasks." The ALJ's explanation and discussion make it clear that he found *no* marked limitations in any functional domain since October 29, 2014, and he specifically stated that "less than marked limitation is found in this domain" in the explanation of his finding for Domain 2.  *See* R. 22, 24.

activities, and there was a positive behavior intervention/strategy.  *See* R. 347.

Plaintiff also contends that the ALJ violated the treating physician rule because Dr. Siddiqi's notes do not support a finding of medical improvement but rather reflect the opposite.  ECF No. 16 at 29.

It is well-established that substantial or considerable weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless "good cause" is shown to the contrary.[37]  If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.[38]

In this case, the ALJ considered and discussed Dr. Siddiqi's evaluation and plainly accepted the diagnosis of ADHD.  *See* R. 21, 507-

---

[37] Crawford v. Commissioner of Social Security, 363 F. 3d 1155, 1159 (11th Cir. 2004) (citing Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir.1997)) ("We have found 'good cause' to exist where the doctor's opinion was not bolstered by the evidence, or where the evidence supported a contrary finding. We have also found good cause where the doctors' opinions were conclusory or inconsistent with their medical records.").  See also Edwards v. Sullivan, 937 F.2d 580, 583-584 (11th Cir. 1991); Sabo v. Commissioner of Social Security, 955 F. Supp. 1456, 1462 (M.D. Fla.1996); 20 C.F.R. § 404.1527(d).

[38] 20 C.F.R. § 404.1527(d)(2).

09.  The medical records reflect that Dr. Siddiqi examined Claimant once and in subsequent visits to the ADHD clinic Claimant was treated by ARNP Dendinger.  Although Dr. Siddiqi observed that Claimant's developmental profile showed delays in his communication, academic, cognitive, and social development, Dr. Siddiqi rendered no opinion regarding the extent of any functional limitations.  His treatment plan was to obtain more information from Claimant's teachers, and then possibly suggest medication management.  *Id*.  His note to the ESE office stated only that Claimant needs small group instruction, and reported that Claimant was prescribed Focalin XR.  R. 525.  In sum, there is nothing in Dr. Siddiqi's notes that suggests the ALJ erred by not assessing greater functional limitations in any of the six domains.

On this record, the Court concludes that the ALJ's finding of a less-than-marked limitation in Domain 2 is supported by substantial evidence. Moreover, even if the ALJ had adopted the findings of the consulting physicians that Claimant had a marked limitation in Domain 2, Claimant still would have been found not disabled because no marked limitation was found in any other domain, and Plaintiff points to no record evidence that suggests the ALJ erred in that regard.

## VI. CONCLUSION

For the foregoing reasons, it is respectfully **RECOMMENDED** that

the decision of the Commissioner terminating Plaintiff's benefits should be

**AFFIRMED.**

**IN CHAMBERS** at Gainesville, Florida this 16th day of May 2018.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**